Jeffrey Brownson
Idaho State Bar No. 7474
LAW OFFICE OF JEFFREY BROWNSON
223 North 6th Street, Suite 215
Boise, Idaho 83702
(208) 342-5800
(208) 437-8041 (fax)
jb@jeffreybrownsonlaw.com

Attorney for Gennady Babitchenko

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAVEL BABICHENKO,<br>GENNADY BABITCHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>NATALYA BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMENTS,<br>MIKHAIL IYERUSALIMETS,<br>ARTUR PUPKO,<br><br>Defendants. | CASE NO. CR-18-00258-BLW<br><br>**DEFENDANT GENNADY BABITCHENKO'S OBJECTION TO PRETRIAL ORDER NO. 1 [666]** |

1 • DEFENDANT GENNADY BABITCHENKO'S OBJECTION TO PRETRIAL ORDER NO. 1 [666]

## I. PROCEDURAL HISTORY

On October 30, 2020, the Court filed Pretrial Order No. 1 ("Order"). (Dkt. 666.) This Order outlined the logistical considerations that will govern the jury trial scheduled to commence February 1, 2021. The Order requested that all defendants formalize any objections to those logistical considerations through written objection. Mr. Babitchenko now files his objection to the Order, as stated below.

## II. ARGUMENT

### A. Barring the Public from the Courtroom Violates Mr. Babitchenko's Sixth Amendment Right to a Public Trial.

The Court's Order states, "[d]ue to space constraints and to reduce the possible spread of COVID-19 the public will not be allowed in Courtroom 3 during trial. The Court will live-stream the trial, meaning that the general public will be able to watch the trial by live video only." Order, p.10. Because this violates Mr. Babitchenko's Sixth Amendment right to a public trial, he objects.

The Sixth Amendment to the United States Constitution requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by impartial jury." The right to a public trial serves many values, including "(1) to ensure a fair trial, (2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions, (3) to encourage witnesses to come forward, and (4) to discourage perjury." *United States v. Waters*, 627 F.3d 345, 360 (9th Cir. 2010), *quoting United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003). In the context of discrete portions of criminal proceedings (e.g., sentencing hearings or the voir dire segments of a criminal trial), where the value of the public's involvement is arguably diminished, the U.S. Supreme Court has still noted:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984). In addition, the Supreme Court has noted that "the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller v. Georgia*, 467 U.S. 39, 48 (1984).

While the COVID pandemic is an unexpected and unprecedented event that has exacerbated logistical planning for the federal courts, the Court's decision to ban the public from the entire trial is an exceedingly rare and unusual step. On its face, the ban puts at risk many of the core values the Ninth Circuit has stated a public trial must protect. While a video-stream may better protect a fair trial than a completely closed courtroom, a video-stream falls far short of the fairness that traditional public attendance can achieve; through a video-stream, the public will not have access to reactions and experiences that it would have available to it in the courtroom itself. After all, as we have all learned over the past months, a video-stream may be a representation of an event, but it is hardly a full substitute for it. A video-stream also fails to adequately remind the prosecutor and judge of their responsibilities to Mr. Babitchenko in the way that permitting the public, including Mr. Babitchenko's friends or family, would do. The Court's ban on the public's participation in this trial erodes the constitutional safeguards a public trial is intended to protect.

While Mr. Babitchenko is sympathetic to the numerous considerations the Court must undoubtedly weigh, the Court's ban on the public is overly broad. It fails to consider reasonable

alternatives as required by the Ninth Circuit that could more fully protect Mr. Babitchenko's constitutional rights.

For example, Mr. Babitchenko previously filed a Motion to Sever. Dkt. (551.) This Court denied that Motion. (Dkt. 674.) Now, left with significant logistical problems because of the numerous defendants to be tried simultaneously, the Court's Order offers procedural compromises in an attempt to safeguard Mr. Babitchenko's constitutional rights. However, these well-intentioned compromises have the very real effect of compromising Mr. Babitchenko's constitutional right to a public trial. A more straightforward solution to fully protect Mr. Babitchenko's rights exists: if the Court simply granted Mr. Babitchenko's Motion to Sever, Mr. Babitchenko would be able to have a public trial, even during this pandemic. The Court itself notes it can safely permit up to 50 individuals to be present in the courtroom, meaning that if Mr. Babitchenko was tried alone, the Court could easily accommodate a jury, the parties, and at least some members of the public. Order, p.14. Alternatively, to the extent that additional space is needed to permit the public to be physically present, this Court could secure a much larger location that would allow the public's attendance.

*Waller* requires the Court to consider reasonable alternatives. Though the Court mentioned during a status conference that it was contemplating one potential alternative location, the Court's Order fails to discuss any alternatives that do not require it to compromise Mr. Babitchenko's rights. The Court's proposed closure is not essential as required by *Press-Enterprise Co.*, because realistic alternatives to closing the trial to the public exist. While the Court's interest in preventing the spread of COVID is laudable, its decision to permit all the defendants' prosecution at once and

to deny a Motion to Sever contributes to the public being precluded from the courtroom. For this reason, and because of the other alternatives that the Court failed to articulate in the Order, its ban on public attendance is not narrowly tailored to its interest in mitigating the spread of COVID. For this reason, Mr. Babitchenko objects to the Court's Order.

### B. Broadcasting a Criminal Trial Violates Rule 53 of the Federal Rules of Criminal Procedure.

Also, Mr. Babitchenko objects to the proposed public ban and video-stream because the Court's proposed broadcasting of the trial violates Rule 53 of the Federal Rules of Criminal Procedure. Rule 53 notes that "[e]xcept as otherwise provided by a statute or these rules, the court must not permit the taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial proceedings from the courtroom." While the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) does permit video conferencing in certain criminal proceedings *with the defendants' consent*, the CARES Act does not provide authorization for broadcasting criminal jury trials. To his knowledge, Mr. Babitchenko is unaware of any additional statute or Federal Rule of Criminal Procedure that would permit this Court to contravene Rule 53.

For this reason, Mr. Babitchenko also objects to the Court's Order denying the public admission into the courtroom and instead providing a video-stream for public consumption.

### C. The Court's Proposed Procedure is Inherently Unfair and Violates Mr. Babitchenko's Due Process Rights Under the Fifth and Fourteenth Amendments.

Mr. Babitchenko objects to the proposed layout out for the courtroom because the Government will be permanently seated near the witness stand, while Mr. Babitchenko will be relegated to sitting in the public gallery for the majority of the trial (and forced to argue amongst

5 • DEFENDANT GENNADY BABITCHENKO'S OBJECTION TO PRETRIAL ORDER NO. 1 [666]

his co-defendants for occasional prime seating nearer to the jury, Government, and witnesses).

In its Order, the Court states that "[t]he Government will be seated at the tables on the north wall of the courtroom (*i.e.*, the area where the defense typically sits). . . ." Order p.3-4. The Court then indicates that "defendants and their attorneys will be seated in the gallery." *Id.* at 3.

> Additionally, the defendants will have access to a larger defense table immediately perpendicular to the government's table (*i.e.*, the counsel table typically used by plaintiffs). The general plan is that if a particular defendant will be more active in examining or cross-examining a witness, then that defendant and attorney will leave their table in the gallery and use the tenth defense table. Defense counsel will be expected to agree among themselves as to which defendant and attorney will be seated at the larger defense table for each witness.

*Id.* at 4.

Mr. Babitchenko objects to this seating assignment because this procedure is inherently prejudicial and may deprive Mr. Babitchenko of a fair trial. While there is minimal case law requiring a particular seating arrangement in a courtroom, the Ninth Circuit and, the United States Supreme Court have recognized that courtroom practices may deprive a defendant of a fair trial. ("[T]he Constitution prohibits any courtroom arrangement or procedure that 'undermines the presumption of innocence and the related fairness of the fact-finding process.'" *United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007) (en banc), *adopting in part United States v. Larson*, 460 F.3d 1200, 1214 (9th Cir. 2006), *quoting Deck v. Missouri*, 544 U.S. 622, 630 (2005)); *see also Carey v. Musladin*, 549 U.S. 70 (2006). After all, "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). A judge "may not adopt procedures that impair a defendant's right to due process or his other rights guaranteed by the constitution." *United States v. Thompson*, 827 F.2d 1254, 1258 (9th Cir. 1987). Likewise, a court

"may not adopt procedures that tend to significantly favor one party over the other." *Id.*

Here, the proposed procedure will significantly favor the Government over Mr. Babitchenko. Perhaps most problematic, Mr. Babitchenko and his counsel will be relegated to the gallery for nearly all witness testimony during the trial. At the same time, the Government will have a proverbial front row seat. This imbalance poses significant and substantial problems. Mr. Babitchenko and his counsel will be physically distanced from the jury and witnesses. They will be unable to see subtle reactions from jurors and witnesses that will be discernible by the Government. Additionally, even if the Court issues an instruction requiring the jury to not draw an unfavorable inference from the seating location of Mr. Babitchenko, the jury will likely be at least subtly influenced by not being able to see Mr. Babitchenko or his counsel with the same familiarity, closeness, and proximity by which the jury will regularly view the Government.

Mr. Babitchenko will also be prejudiced because the Court's proposed seating arrangement will compromise his counsel's ability to represent him. While the Court will undoubtedly do its best to be cognizant of objections and questions that attorneys seated in the gallery may want to present, the seating arrangement will inevitably place defense counsel located in the gallery at a disadvantage. The Court's Order itself recognizes that the seating available at a traditional counsel table will be superior when it suggests the myriad of co-defendants' counsel must determine amongst themselves how to best share the prime seating, based upon which co-defendants' counsel anticipates being most involved with a specific witness. The Government will never have to cede its prime seating under the Order, giving it a significant advantage over Mr. Babitchenko.

Mr. Babitchenko also objects to the Court's Order because the Court will permit the

Government to have significantly more resources physically present in the courtroom than it will allow Mr. Babitchenko. The Court's Order violates the *Thompson* prescription described above, as these procedures will significantly favor the Government over Mr. Babitchenko and will consequently violate Mr. Babitchenko's due process rights. The Court's Order states, "[t]o accommodate social distancing, the Court intends to allow only one attorney per defendant to be present in Courtroom 3 during the trial." Conversely, the Court "will allow the Government to have three individuals seated at counsel table. . . . If there is space at, or adjacent to, counsel table for the Government, the Court will also permit the Government case agent to remain the courtroom." Order, p.8. Notably, the Court also makes clear that, while the Government will be able to have investigators (and multiple lawyers) present at the Government's table, defense counsel will not be able to have any investigators, additional counsel, or staff physically present in the courtroom. In fact, "[t]he Court anticipates that defense counsel will use [the instant] messaging platform to communicate with . . . counsel, staff, or investigators who are not physically present in the courtroom." *Id.* at 7.

Because Mr. Babitchenko's investigator will not be permitted to be in the courtroom, any communication between counsel and the investigator will have to be done via instant messaging. Mr. Babitchenko's investigator will be required to make all of his observations via video-stream; this observation will again be devoid of the context that the Government's case agent will be able to perceive from within the courtroom. If permitted to watch the trial from the courtroom, Mr. Babitchenko's investigator could observe how the jury responds to particular testimony or be able to immediately secure the attention of Mr. Babitchenko's counsel while he is examining a witness.

While these viewing and participating methods are perhaps better than nothing, these communication methods, especially within the context of a complex and extended trial, are inadequate and fundamentally unequal compared to the in-person communication and observation that this Court will permit the Government to utilize. Because the Government's multiple counsel and case agents will not be subjected to the same requirements, the Government will have significant tactical advantages over Mr. Babitchenko. For example, while the Government is examining a witness, the Government's co-counsel may read a jury's demeanor and draft notes or point to documents in real-time for the examiner to utilize in his or her examination.

The Government will have an unfair advantage over Mr. Babitchenko. When assessing equality and fairness of access between the parties, the trial's video-stream is an inadequate palimpsest that will provide only partial insight into what is happening in the courtroom. For this reason, Mr. Babitchenko objects to the Court's Order as violative of his Due Process Rights under the Fifth and Fourteenth Amendments of the United States Constitution.

> **D. The Court's Demand that Mr. Babitchenko Share Resources with Co-Defendants Violates Mr. Babitchenko's Due Process Rights and Right to a Fair Trial.**

In numerous instances, the Court's Order presupposes that there are two interests at stake in this trial – first, the Government's interest, and second, the interest of the numerous co-defendants. In reality, Mr. Babitchenko's interest in this matter diverges from both the Government's interest and potentially his co-defendants' trial strategy. Despite this fact, the Court requires that Mr. Babitchenko share resources with other co-defendants, in effect assuring that Mr. Babitchenko is provided fewer resources than the Government. Mr. Babitchenko objects to the

Court's Order because it requires Mr. Babitchenko to share resources, including open-air office space and an evidence presentation system operator, with his co-defendants.

For example, the Court's Order states that "[t]he Court will allow the Government, on the one hand, and the entire defense group, on the other, to have one individual in the courtroom to operate the evidence presentation system." Order, p.9. Mr. Babitchenko should be free to utilize an individual and presentation system of his choosing. The presentation of evidence is a fundamental component of trial advocacy – and an individual who participates in the operation of an evidence presentation system is a fundamental member of the trial team. As a team member, an evidence operator will be privy to Mr. Babitchenko's trial strategy's most fundamental aspects. It is fundamentally unfair to require Mr. Babitchenko to utilize an evidence presentation operator who will serve the same function for eight other co-defendants who have potentially divergent interests.

The Court further notes, "[it] will make available office space on the 6th floor of the courthouse for defense counsel to utilize during trial. It may not be possible for the Court to provide nine separate offices, for each defendant and their counsel. The Court will, however, provide a suite of office space to be shared by defendants." Order, p.9.

Thus, while the Government has a private space that it is not required to share with anyone else, Mr. Babitchenko will again be placed in a position where he and his counsel will have inadequate and unequal access to on-site space properly segmented from his co-defendants. Because his interests may diverge from his co-defendants, this provided space is potentially no workspace at all. Again, these procedures will violate *Thompson*'s prescription that a court "not

adopt procedures that tend to significantly favor one party over the other."

The Court's failure to provide the opportunity for equal courtroom and resource access will undermine the fundamental fairness required by due process. It will infringe Mr. Babitchenko's ability to receive a fair trial. For this reason, Mr. Babitchenko objects to the Court's Order.

### E. The Court's Proposed Voir Dire Prevents Mr. Babitchenko From Adequately Exercising Peremptory Challenges and Ensuring an Impartial Jury.

The Court's Order significantly curtails voir dire. According to the Order, after the prospective jurors have completed a questionnaire, "[t]he Court will then conduct voir dire, providing jurors with an opportunity to explain affirmative answers. . . . The Court will give counsel a *very limited* opportunity to ask follow-up questions. These questions should be limited to specific answers provided by the jurors." Order, p.12 (emphasis added). Mr. Babitchenko objects to this voir dire procedure. It will impair Mr. Babitchenko's right to exercise peremptory challenges effectively and is inadequate to ensure that an impartial jury is empaneled.

It is especially paramount that Mr. Babitchenko be provided ample opportunity to examine prospective jurors to ensure that no jurors have ethnic or racial biases that may prevent Mr. Babitchenko from receiving a fair trial. Here, the voir dire outlined in the Order will be insufficient to permit Mr. Babitchenko to uncover jurors' biases, preventing him from informedly exercising his peremptory challenges. "[V]oir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991).

> *Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without an adequate *voir*

>*dire*, the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled. Similarly, lack of adequate *voir dire* impairs the defendant's right to exercise peremptory challenges where provided by statute or rule, as it is in the federal courts.

*Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) (plurality opinion) (internal citations omitted).

While the difficulties imposed upon Mr. Babitchenko resulting from this limited voir dire are apparent, the justification for the Court's extremely abbreviated voir dire is less clear. Providing defendants with a timeframe to thoroughly examine and question prospective jurors will not create additional COVID concerns, as it will not increase the number of individuals who need to be present in the courtroom at any one time; prospective jurors will be in the courtroom regardless of the length of the voir dire process. The only tangible benefit of the abbreviated voir dire schedule is that the trial, which is currently scheduled to last ten weeks, may be shortened by a day. Given the essential nature of voir dire, and its importance in ensuring a fair and impartial jury is empaneled, Mr. Babitchenko objects to the unnecessarily truncated voir dire proposed in the Court's Order.

### III. Conclusion

Based on the foregoing, Mr. Babitchenko objects to the Court's Order.

DATED this 13th day of November 2020.

/s/ Jeffrey Brownson

CERTIFICATE OF SERVICE

  I hereby certify that on this 13th day of November 2020, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

  Katherine L. Horwitz
  Christian S. Nafzger
  Assistant United States Attorneys
  Office of the United States Attorney
  1290 West Myrtle Street, Suite 500
  Boise, ID 83702
  Kate.Horwitz@usdoj.gov
  Christian.Nafzger@usdoj.gov

  Tim Flowers
  U.S. Department of Justice
  Criminal Division
  1301 New York Ave. NW, Suite 600
  Washington, D.C. 20530
  Timothy.Flowers2@usdoj.gov

  John DeFranco
  1031 E. Park Blvd.
  Boise, ID 83712
  jcd@greyhawklaw.com
  Barry Flegenheimer
  119 First Ave. S., Suite 500
  Seattle, WA 98155
  barrylfp@gmail.com
  *Attorneys for Pavel Babichenko*

  Paul E. Riggins
  380 South 4th Street, Ste. 104
  Boise, ID 83702
  rigginslaw@gmail.com
  Andrew Masser
  2399 S. Orchard St., Suite 204
  Boise, ID 83705
  andrew@baldaufmasser.com
  *Attorneys for Piotr Babichenko*

13 • DEFENDANT GENNADY BABITCHENKO'S OBJECTION TO PRETRIAL ORDER NO. 1 [666]

Rob S. Lewis
913 W. River Street, Ste. 430
Boise, ID 83702
office@roblewislaw.com
*Attorney for Timofey Babichenko*

Greg S. Silvey
P.O. Box 5501
Boise, ID 83705
greg@idahoappeals.com
*Attorney for Kristina Babichenko*

J.D. Merris
913 W. River Street, Ste. 420
Boise, ID 83702
jmerris@earthlink.net
*Attorney for Natalya Babichenko*

Robyn A. Fyffe
P.O. Box 5681
Boise, ID 83705
robyn@fyffelaw.com
*Attorney for David Bibikov*

Melissa Winberg
Nicole Owens
702 W. Idaho Street, Ste. 1000
Boise, ID 83702
melissa_winberg@fd.org
nicole_owens@fd.org
*Attorneys for Anna Iyerusalimets*

Ellen Nichole Smith
P.O. Box 140857
Garden City, ID 83714
ellen@smithhorras.com
*Attorney for Mikhail Iyerusalimets*

Thomas B. Dominick
500 W. Bannock Street
Boise, Idaho 83702
tom@dominicklawoffices.com
*Attorney for Artur Pupko*

/s/ Jeffrey Brownson